AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Louisiana

| | |
|---|---|
| United States of America<br>v.<br><br>GRANT MCKAY DURTSCHI<br><br>*Defendant(s)* | )<br>)<br>) Case No.<br>)    22-MJ-16<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __August 1, 2020__ in the county of __Ascension Parish__ in the __Middle__ District of __Louisiana__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | Production of Child Pornography |
| 18 U.S.C. § 2252A(a)(2) | Distribution of Child Pornography |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Stephanie Bobo, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirement of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: 03/17/2022

_____
*Judge's signature*

City and state: Baton Rouge, LA

Scott D. Johnson, Magistrate Judge
*Printed name and title*

USA Sealed Group
USM
USPO

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF LOUISIANA

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
IN THE MATTER OF GRANT MCKAY DURTSCHI**

I, Stephanie Bobo, Special Agent (SA) of the Federal Bureau of Investigation (FBI), being duly sworn, do hereby depose and state:

**INTRODUCTION AND AGENT BACKGROUND**

1. I have been employed as an FBI SA since September 2017. Throughout my law enforcement career, I have participated in investigations of bank fraud, health care fraud, bankruptcy fraud, public corruption, intellectual property rights, crimes against children, child exploitation, child pornography, and human trafficking. I am familiar with, and have employed, the investigative techniques used in these investigations, such as the use of cooperating witnesses, confidential informants, interviews, analysis of bank records, consensual recordings, search and seizure warrants, and Title III court authorized wire interceptions.

2. In the performance of my duties, I have investigated and assisted in the investigation of matters involving the possession, collection, production, and distribution of images of child pornography, in violation of 18 U.S.C. § 2252 and 2252A I have personally conducted and participated in numerous child exploitation and child pornography investigations, search warrants, and suspect and witness interviews. I have received training and instruction in the field of investigation of child pornography and have participated in investigations relating to sexual exploitation of children. I have successfully completed several basic and advanced child exploitation and child pornography investigation courses, including online undercover techniques, undercover chat, and peer-to-peer investigations. As part of my training and experience, I have

1

reviewed images containing child pornography in a variety of formats (such as digital still images and video images, and media, such as storage devices, the internet, and printed images).

3. This affidavit is in support of a criminal complaint charging Grant Durtschi (**"DURTSCHI"**), date of birth October 10, 1973, and social security \*\*\*-\*\*-2405, with Production of Child Pornography, in violation of 18 U.S.C.§2251(a) and Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2).

## LAW AND DEFINITIONS

4. Title 18, United States Code, Section 2251(a) prohibits a person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or transporting any minor in or affecting interstate or foreign commerce, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted in or affecting interstate or foreign commerce.

5. Title 18, United States Code, Section 2252A(a)(2) prohibits a person from knowingly distributing any visual depiction of a minor engaging in sexually explicit conduct that has been mailed, or shipped or transported using any means or facility of interstate commerce, or in or affecting interstate commerce by any means, including by computer.

6. "Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.[1]

---

[1] *See* 18 U.S.C. §2256(5).

2

7. "Sexually explicit conduct," as defined in 18 U.S.C. §2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. Whether a visual depiction constitutes such a lascivious exhibition requires a consideration of the overall content of the material, including whether the focal point of the visual depiction is on the child's genitalia or pubic area; whether the setting of the depiction is sexually suggestive, that is, in a place or pose associated with sexual activity; whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child; whether the child is fully or partially nude; whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; or whether the depiction is designed to elicit a sexual response in the viewer.[2]

## PROBABLE CAUSE

8. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C.§2251(a) and 18 U.S.C. § 2252A(a)(2) have been committed by **DURTSCHI**.

9. The information contained herein is based upon my own investigation as well as information supplied to me by other law enforcement officers. I have not included all facts known to me concerning this matter, but only facts necessary to set forth probable cause.

### Initial Investigation

10. This investigation stemmed from a complaint received from an individual, identified herein as "ADULT 1," regarding sexually explicit photos being taken of his minor-

---

[2] *See United States v. Dost*, 636 F.Supp. 828 (S.D.Cal.1986), *aff'd* 813 F.2d 1231 (9th Cir.1987); *See also* Fifth Circuit Pattern Jury Instructions, 2.85A (2019).

3

stepdaughter. Specifically, on August 2, 2021, ADULT-1 called the FBI National Threat Operations Center to report that his wife, ADULT-2, was producing child sexual abuse material of his minor step-daughter (hereinafter, "**VICTIM-1**"). Specifically, ADULT-1 reported that his wife allowed **DURTSCHI** to take sexually explicit photographs of **VICTIM-1**.

11. **VICTIM-1** (D.O.B. xx/xx/2008) is a thirteen (13) year old female and resident of Prairieville, Louisiana, in the Middle District of Louisiana.

12. On August 11, 2021, FBI Agents interviewed ADULT-1 at the FBI Baton Rouge Resident Agency. ADULT-1 stated that on or about February or March 2020, **VICTIM-1** began working with an acting/modeling agency after expressing an interest in acting/modeling.

13. His wife, ADULT-2, began posting pictures of **VICTIM-1** on Instagram to help **VICTIM-1**'s modeling career. ADULT-2 posted the pictures on **VICTIM-1**'s Instagram account.

14. According to ADULT-1, it was around this time that his wife was contacted by J.L., the mother of another local minor-model, who introduced ADULT-2 and **VICTIM-1** to **DURTSCHI**.

15. ADULT-2 and **VICTIM-1** traveled to different states to do photoshoots with **DURTSCHI**, including Texas, Louisiana, and Florida. Other minor-models were also present for some of the photoshoots with **VICTIM-1**.

16. ADULT-2 informed agents that in the Spring of 2021, ADULT-2 and another mother, P.G., sued **DURTSCHI** for selling photographs of their daughters without their consent. P.G. is the mother of B.S. (hereinafter, "**VICTIM-2**"), a fourteen (14) year old female who resides in Polson, Montana.

17. On or about August 2021, ADULT-1 began talking with **DURTSCHI** over the application Telegram. Based on my training and experience, Telegram is a free, cross-platform,

cloud-based instant messaging (IM) system available for desktop and mobile platforms. The service also provides end-to-end encrypted video calling, VoIP, file sharing and several other features. The servers of Telegram are distributed worldwide but its operational center is based in Dubai in the United Arab Emirates. Various client apps are available for desktop and mobile platforms. Telegram provides end-to-end encrypted voice and video calls and optional end-to-end encrypted "secret" chats.

18. In their conversations on Telegram, **DURTSCHI** told ADULT-1 about men who called themselves "sponsors" and who gave money to minor females to help fund their modeling careers. In exchange for their money, these "sponsors" could request photographs of the minor females from the photoshoots. In some instances, the sponsor could pay to attend the photoshoots with the minor females. **DURTSCHI** told ADULT-1 that the "sponsors" paid the minors through the peer-to-peer payment applications Venmo or CashApp.

19. ADULT-1 also noted that **DURTSCHI** told ADULT-2 that he did not take nude photographs of any minor females. However, **DURTSCHI** admitted that he was aware his photographs were purchased by "pedos." **DURTSCHI** told ADULT-2 multiple times the main buyers of these photographs were pedophiles. **DURTSCHI** said that "megalinks" were the most common way he distributed the photographs of the minors from the photoshoots.

20. Based on my training and experience, Mega is a cloud storage and file hosting service maintained by Mega Limited based in Auckland, New Zealand. The service is offered through web browsers and web based apps for Android, iPhone, and Windows and can be accessed from traditional computers along with smart phones and tablets. Users can sign up for free and are provided at least 15GB of cloud storage to save files. Mega stores these files using end-to-end encryption which prevents anyone, including Mega itself, from accessing or viewing the files or

5

folders without the encryption key. Files or folders can then be shared with other individuals by creating a link to the file or folder. The link will contain the encryption key needed to decrypt the file or folder.

21.     After the initial complaint from ADULT-1, I learned of another complaint regarding **VICTIM-1** made to the Louisiana Bureau of Investigation ("LBI"). I obtained the full set of photos taken by **DURTSCHI** of **VICTIM-1** that were received by LBI. The photographs consisted of a series of **VICTIM-1** in various poses in a G-string bikini on a bed. There were 80 images. Many of the images included **VICTIM-1** with her legs spread apart while lying on the bed. Approximately two of the images included **VICTIM-1** on all fours crawling on the bed. Approximately three of the images were **VICTIM-1** positioned with her head on a pillow and her buttocks raised in the air. In one of the images the focal point was on **VICTIM-1**'s genitals while she was posed in a sexual position on the bed. The **VICTIM-1**'s genitals were barely covered by the G-string bikini.

### Interview of ADULT-2

22.     Based on the information provided by ADULT-1, I, along with another FBI Agent, interviewed ADULT-2 at her home in Prairieville, Louisiana on August 18, 2021.

23.     ADULT-2 stated that **DURTSCHI** shared his photographs of **VICTIM-1** with her using Google Drive. Based on my training and experience, I know that Google Drive is a cloud storage application, allowing the user to store, share, and collaborate on files and folders from any mobile device, tablet, or computer. Drive provides encrypted and secure access to your files. Files shared with you are proactively scanned and removed when malware, spam, ransomware, or phishing is detected. And Drive is cloud-native, which eliminates the need for local files and minimizes risk to your devices.

24.     **DURTSCHI** created a second Google account for **VICTIM-1** because he believed there was not enough storage space on **VICTIM-1**'s account.[3] **DURTSCHI** provided ADULT-2 with the login information for the second Google account.  When ADULT-2 logged into the account, she saw emails indicating that **DURTSCHI** was selling **VICTIM-1**'s photographs and videos, along with other items, such as panties worn by **VICTIM-1**, to multiple different men. ADULT-2 identified at least 20 different men to whom **DURTSCHI** sold **VICTIM-1**'s photographs, videos and other items.  **DURTSCHI** also posted photographs of **VICTIM-1** through his Instagram accounts, @timelssintx and @timelessintx2 (collectively, "Instagram accounts").

25.     **DURTSCHI** asked to take nude photographs of **VICTIM-1**. Additionally, ADULT-2 was aware **DURTSCHI** told **VICTIM-2** he would rather see her naked out of all the girls he photographed.

26.     In approximately July 2020, **DURTSCHI** asked to take nude photographs of **VICTIM-1**. **DURTSCHI** became persistent in asking to take nude photographs of **VICTIM-1**.

27.     **VICTIM-1** was last photographed by **DURTSCHI** in October 2020 in Plano, Texas. ADULT-2. said that during this shoot, **VICTIM-1** was uncomfortable with how **DURTSCHI** was touching her. **DURTSCHI** started to get "handsy" during the shoot.

28.     ADULT-2 said that individuals wanting to buy **VICTIM-1**'s photographs contacted **DURTSCHI. DURTSCHI** then sent the requests to ADULT-2 who would choose the photos that would be distributed to those purchasing **VICTIM-1**'s photographs.

---

[3] The name of the second Google account is known to law enforcement but has intentionally been omitted from this affidavit to protect the identity and privacy of **VICTIM-1**.

7

29. ADULT-2 said that **DURTSCHI** sold photographs publicly to "whoever he wanted." **DURTSCHI** sold the photographs through the website www.timelessintx.com. ADULT-2 reported the website, and it was ultimately shut down. In addition, ADULT-2 reported the Instagram account @timelessintx, which was also shut down.

30. ADULT-2 consented to the search of her phone and a forensic extraction was made of the device.

### Interview of VICTIM-1

31. On September 28, 2021, agents conducted a child forensic interview with **VICTIM-1**.

32. **VICTIM-1** stated that she was last photographed by **DURTSCHI** in October 2020. The photoshoot took place near Dallas, Texas, at an AirBNB rented by **DURTSCHI**. **VICTIM-1**, her mother, and **DURTSCHI** stayed at the AirBNB together. **DURTSCHI** stayed in one room, while **VICTIM-1** and her mother stayed in another room.

33. **VICTIM-1** said that she got upset with **DURTSCHI** during the photoshoot because he "touched her butt". She said that **DURTSCHI** moved her to position her for a photo and touched her butt in the process. It made her feel uncomfortable. **DURTSCHI** also untied the string on the bottoms of her swimsuit. **VICTIM-1** caught the suit and tied it back.

34. **DURTSCHI** asked **VICTIM-1** to take nude photographs. **DURTSCHI** said it was artistic. **VICTIM-1** was not comfortable taking nude photographs.

### Use of Electronic Devices to Facilitate Distribution of CSAM

35. Agents reviewed the evidence obtained from the forensic analysis of ADULT-2's phone. The phone contained communications between ADULT-2, **DURTSCHI**, and others via the messaging application Telegram.

36. In those conversations, **DURTSCHI** admitted to ADULT-2 that he was a pedophile. **DURTSCHI** stated that his family knew he was a pedophile, and 99% of the people in this industry [teen modeling] were pedophiles.

37. In one conversation, dated August 17, 2020, ADULT-2 told another individual, who is believed to be **DURTSCHI**, that she downloaded all of the photos shared by **DURTSCHI** from **VICTIM-1**'s Google Drive account to her computer.



Deleted Account — 20:03
Are there any other post type pics you don't have? I shared some. But might have had more. I usually download things so the drive can be emptied for the next batch.



HK — 20:08
I went through my computer. It looks like I have everything downloaded now.

38. On March 11, 2022, a federal search warrant was executed at ADULT-2's residence, located in Gonzales, Louisiana. During the search, ADULT-2 told me which items in the residence belonged to her. Specifically, she told me a laptop and a hard drive belonged to her.

39. On the same day, I reviewed the hard drive that was collected from ADULT-2's residence. On the hard drive were images of **VICTIM-1** wearing a white one-piece leotard with white stockings and red high heels. The pictures were taken as a series of sexual poses on the bed. Many of the images included **VICTIM-1** with her legs spread apart while lying on the bed. Approximately 17 of the images included **VICTIM-1** on all fours crawling on the bed. Approximately 10 of the images were **VICTIM-1** positioned with her head down on the bed and her buttocks raised in the air. The sides of her leotard were rolled back exposing her buttocks. The images showed a close-up of the **VICTIM-1**'s genitals posed in a sexual position on the bed. The

**VICTIM-1**'s genitals were barely covered because the sides of the leotard were rolled back to expose the genitals.

40. Through forensic review of the hard drive, the images described above possessed a Zone identifier which indicates the files originated from the Internet.

41. A forensic review was conducted on the laptop that was retrieved from ADULT-2's residence. I reviewed the downloads folder on the laptop and observed several zipped folders that were downloaded from Google Drive on August 1, 2020.

42. The FBI's Forensic Examiner Nikilia Stovall extracted the zipped folders and was able to locate the same images that were observed from the hard drive and described above. These images were downloaded from Google Drive onto the laptop on August 1, 2020.

43. **DURTSCHI** uploaded the images to the Google Drive account that was then accessed and downloaded by ADULT-2.

44. ADULT-2 was in control of the laptop that downloaded the images of CSAM on August 1, 2020. Further, she was located in the Middle District of Louisiana when those images were downloaded.

## CONCLUSION

45. Based upon the foregoing facts, I have probable cause to charge **DURTSCHI** with Production of Child Pornography, in violation of 18 U.S.C.§ 2251(a) and Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(1).

46. I hereby swear that the information contained in this affidavit is true and correct to the best of my knowledge.

Respectfully submitted,

*Stephanie Bobo*

Stephanie Bobo, Special Agent
Federal Bureau of Investigation

Affidavit submitted by email/.pdf and attested to me as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on 3/17/22.

_____
JUDGE SCOTT D. JOHNSON
UNITED STATES MAGISTRATE JUDGE